# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**BRAD DIETRICH, JR.,**          CASE NOS.    3:23 CV 920
**AMY BREWSTER,**                            3:23 CV 1188

      Plaintiffs,

      v.                             JUDGE JAMES R. KNEPP II

**WESTERN OHIO REGIONAL**
**TREATMENT AND HABILITATION**
**CENTER, et al.,**                          **MEMORANDUM OPINION AND**
                                             **ORDER**
      Defendants.


## INTRODUCTION

Currently pending in the above-captioned cases are Defendants Western Ohio Regional Treatment and Habilitation Center ("Worth Center"), Brent Burk, and Vivian Wilson's Motions for Judgment on the Pleadings as to cases brought by Plaintiff Brad Dietrich, Jr. and Amy Brewster, respectively. (Doc. 12) (Case No. 23 CV 920 – Dietrich); (Doc. 13) (Case No. 23 CV 1188 – Brewster). Both motions are fully briefed and decisional. Due to their related facts and arguments, the Court addresses the cases together. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

For the reasons stated below, the Court grants both Motions for Judgment on the Pleadings.

## BACKGROUND

As alleged in the Complaints, the facts relevant to the pending motions are as follows:

Dietrich and Brewster are both former employees of the Worth Center. (Dietrich Complaint, at ¶ 1; Brewster Complaint, at ¶ 1).

Dietrich "provided an anonymous letter to the board, detailing abuses of power by" Burk at the Worth Center "which affected the level of services provided to the clients at the Worth Center, and created a greater burden on other staff, including [Dietrich]." (Dietrich Complaint, at ¶ 8). Dietrich "acted in an attempt to stop . . . Burk's abuse of power and misuse of resources." *Id.* at ¶ 17. Burk, without authority, listened to an executive session of the board meeting where the letter was discussed, "and identified [Dietrich] as the whistle blower." *Id.* at ¶ 9. Burk "promised retribution against [Dietrich], later placing him on administrative leave and terminating Plaintiff's employment." *Id.* at ¶ 10. Burk "conspired with Defendant Wilson" and others "to unlawfully terminate Plaintiff's employment on or about August 23, 2021." *Id.* at ¶ 11.

Brewster "supported" Dietrich "in his whistle blowing action and supported his claims of wrongdoing." (Brewster Complaint, at ¶ 9). She "acted in an attempt to effectuate her job and report abuses of power". (Brewster Complaint, at ¶ 19). Dietrich "was singled out for exposing . . . Burk's abuse of power and misuse of resources to the Board, he was then treated differently than the other employees (Dietrich Complaint, at ¶ 12). Brewster "was singled out for supporting another former employee and treated differently than the other employees because of it" (Brewster Complaint, at ¶ 10). Burk "sought retribution against [Brewster] because of her involvement in writing the letter." *Id.* at ¶ 21. Burk and Wilson "retaliated against" Brewster after she "supported" Dietrich and placed her on leave. *Id.* at ¶ 11. This retaliation "was directly related to [Brewster's] involvement in supporting another employee in his whistle blowing actions." *Id.* at ¶ 12. Brewster asserts Burk and Wilson "conspired" with others to "unlawfully terminate" her employment on or about September 23, 2021. *Id.* at ¶¶ 14, 22.

Dietrich and Brewster both assert their terminations were "unlawful, and in response to a whistle blowing action against Defendants." (Dietrich Complaint, at ¶ 13; Brewster Complaint, at ¶ 15). They also assert they were "treated differently" than other employees and their

terminations were "retribution" or retaliation. (Dietrich Complaint, at ¶¶ 12, 22, 27; Brewster Complaint, at ¶ 25).

Brewster is "an elderly woman" (Brewster Complaint, at ¶ 33), and Dietrich is a gay man (Dietrich Complaint, at ¶ 33). Both assert they were "qualified for" their positions and performed their duties "satisfactorily." (Dietrich Complaint, at ¶ 34; Brewster Complaint, at ¶¶ 34-35). Dietrich asserts he was "targeted and subject to explicit sexual profanity, specifically because of his sexual orientation." (Dietrich Complaint, at ¶ 35); *see also* Dietrich Complaint, at ¶ 28 ("Under Defendant Burk, [Dietrich] was subject to unwelcoming conduct, demeaning behavior, and attacks on his sexual orientation, which caused an intentional infliction of emotional distress on [Dietrich]."). Brewster asserts her "age, sex, and pay were prominent factors in her termination." (Brewster Complaint, at ¶ 37). She further asserts she was "subjected to unwelcome conduct, targeting [her] at her place of employment, hurling false accusations at [her], threatening her employment, and eventually terminating her employment entirely." *Id.* at ¶ 29.

Dietrich's Complaint asserts he received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on or about January 14, 2022; he attaches a copy to his Complaint that is dated March 15, 2023. (Dietrich Complaint, at ¶ 15); (Dietrich Complaint, Doc. 1, at 9). Dietrich's EEOC charge, which Defendants attach to their Answer, checked a box asserting discrimination on the basis of retaliation. (Dietrich, Doc. 6-1). In his EEOC charge, Dietrich reported that Burk and other members of senior staff were "taking advantage of staff, facilities, the time clock, and fudging hours and vacation/sick leave, several staff were not being

3

given proper bonuses, myself included, [and] worst of all the inmates were being verbally and emotionally abused by the staff." (Doc. 13-1).[1]

Brewster received a right to sue letter from the EEOC on March 16, 2023. (Brewster Complaint, at ¶ 17); (Brewster Complaint, Doc. 1-1, at 1). Brewster's EEOC charge, which she attaches to her opposition brief, includes checked boxes asserting discrimination on the basis of age and retaliation. (Brewster, Doc. 14-1). Brewster reported Dietrich approached her with "concerns of ethical misconduct" by Burk and Wilson, and she helped him determine the appropriate course of action. *Id.* She asserts after Dietrich was placed on administrative leave, she "was then asked to voice [her] concerns about the administrative staff" and "wrote [her] own letter to the Board with her own concerns." *Id.*

Each Complaint contains four causes of action, entitled:

1. Whistleblower Retaliation

2. Intentional Infliction of Emotional Distress

3. Title VII, Discrimination Based on a Protected Class

4. Wrongful Termination

(Doc. 1) (Case No. 23 CV 920 – Dietrich); Doc. 1 (Case No. 23 CV 1188 – Brewster).

## STANDARD OF REVIEW

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The pleadings must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 470

---

1. The Court may consider a plaintiff's EEOC charge without converting the motion into one for summary judgment because it is central to the claim alleged. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (holding district court erred in failing to consider plaintiff's EEOC charge when deciding a motion to dismiss the complaint).

(2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

DISCUSSION

Defendants move for judgment on the pleadings as to all claims in both Dietrich's and Brewster's complaints. (Dietrich, Doc. 12; Brewster, Doc. 13). Plaintiffs concede their wrongful termination claims (the fourth cause of action) should be dismissed, and Dietrich concedes his class-based discrimination claim (the third cause of action) should be dismissed. *See* Dietrich, Doc. 13; Brewster, Doc. 14. Both Plaintiffs assert their first and second causes of action should survive, and Brewster asserts her third cause of action should survive. Plaintiffs further request leave to amend their complaints in the alternative.

For the reasons discussed below, the Court grants Defendants' motions for judgment on the pleadings and denies Plaintiffs' requests for leave to amend.

<u>Whistleblower Retaliation – Dietrich and Brewster (First Cause of Action)</u>

As Defendants point out, Plaintiffs' first cause of action is entitled "Whistleblower Retaliation" but does not identify the legal basis for the claim. Nevertheless, Plaintiffs' opposition briefing makes clear these claims are brought under Title VII. *See* Dietrich, Doc. 13,

at 5; Brewster, Doc. 14, at 5.[2] Defendants contend Plaintiffs cannot establish a Title VII retaliation claim because they do not identify any Title VII protected activity in which they engaged. Plaintiffs respond that "reporting Defendants refusing to pay overtime bonuses, and claiming to be at work and receiving wages, when Defendants were not at work as documented by Plaintiff, is clearly a protected activity." (Dietrich, Doc. 13, at 7); *see also* Brewster, Doc. 14, at 7 ("Here, supporting the allegations of Defendants['] violations of Ohio law, by Plaintiff, is clearly a protected activity.").

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Title VII prohibits both "status-based discrimination" by an employer and "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Texas Se. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. §§ 2000e-2(a), 2000e-3(a)). Title VII's anti-retaliation provision prohibits retaliation against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

A plaintiff establishes a *prima facie* case for retaliation by showing: (1) he or she engaged in a protected activity under Title VII; (2) his or her employer was aware of that activity; (3) he or she suffered an adverse employment action; and (4) there was a causal connection between the adverse action and the protected activity. *Taylor v. Geithner*, 703 F.3d

---

2. *See also* Dietrich, Doc. 13, at 10 and Brewster Doc. 14, at 12 (both stating "Plaintiff concedes that [his/her] initial argument under the Title VII anti-retaliation provision is the appropriate argument[.]").

6

328, 336 (6th Cir. 2013). At the pleading stage, it is not necessary for a plaintiff to establish a *prima facie* case. *Bar v. Kalitta Charters II, LLC*, 2022 WL 3042844, at \*5 (6th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Rather, a plaintiff need only to allege facts plausibly suggesting "that he was fired in retaliation for opposing what he reasonably believed to be a discriminatory practice." *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 506 (6th Cir. 2002). Further, "Title VII allows employees to sue for retaliation when the employer punishes them for another employee's protected conduct." *Hayes v. Metro. Gov't of Nashville*, 2023 WL 8628935, at \*6 (6th Cir.) (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011)).

"Under Title VII, there are two types of protected activity: participation in a proceeding with the . . . EEOC and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). Only the second is at issue here.[3]

Protected conduct includes "complaining to anyone . . . about allegedly unlawful practices". *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). But "this requirement comes with an important qualification." *Jenkins v. Regents of Univ. of Mich. Health Sys*, 763 F. App'x 545, 552 (6th Cir. 2019). "While [courts] "do not 'require that the plaintiff's complaint be lodged with absolute formality, clarity, or precision[,]'" the Sixth Circuit has explained "that general 'complaints to management' do not constitute protected activity when the plaintiff does not 'object[ ] to discriminatory conduct against her based on her membership in a protected class.'" *Id.* (quoting *Braun v. Ultimate Jetcharters*, LLC, 828 F.3d 501, 511 (6th Cir.

---

3. Although both Plaintiffs filed EEOC charges of discrimination, they did so after the allegedly retaliatory actions claimed. *See* Dietrich, Doc. 13-1 (EEOC charge dated January 12, 2022, asserting discriminatory action took place between June 1, 2021, and August 26, 2021); Brewster, Doc. 14-1 (EEOC charge dated January 20, 2022, asserting discriminatory action took place between June 1, 2021, and September 23, 2021). An EEOC charge post-dating the alleged retaliation is not protected activity for these purposes. *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 871 (6th Cir. 2015). Plaintiffs do not argue otherwise.

7

2016) (quotations and citations omitted)). That is, complaints unrelated to allegedly discriminatory action under Title VII are not protected activity for purposes of the statute. *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007) (holding the plaintiff's actions did not constitute protected activity where "the record [did] not contain any evidence that [the plaintiff] specifically alleged discriminatory employment practices in the [complaint made to the manager]."); *Smith v. Bd. of Trs. of Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 901 (N.D. Ohio 2010) ("An employee['s] complaints to an employer, supervisor, or union representative constitute protected activity only if they relate to unlawful discrimination."); *cf. Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (holding that employee's allegation that manager is a racist is not protected activity under the ADEA because "the allegation is not that Brown & Williamson is engaging in unlawful employment practice, but that one of its employees has a racial intolerance" and that charge of "ethnocism" is too vague to constitute opposition to an unlawful practice).

A plethora of caselaw addresses Title VII's opposition or retaliation provision similarly. *See Watkins v. Texas Dep't of Crim. Just.*, 269 F. App'x 457, 462 (5th Cir. 2008) ("If anything, the record reveals he believed he was treated unfairly because of critical comments he made to the media in January 2000 concerning prison under-funding and staff shortages. These comments are not protected activity under Title VII, and therefore cannot serve as grounds for a Title VI retaliation action."); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."); *Davis v. James*, 597 F. App'x 983, 987 (10th Cir. 2015) ("Since Davis argues only that her EEO complaint contained an allegation that she was being retaliated against because she engaged in whistleblowing about timecard fraud, she could not have had a reasonable good faith belief that she was opposing conduct prohibited by

8

Title VII when she filed her EEO complaint. Thus, Davis did not meet her burden of showing that she engaged in a protected activity."); *Holmes v. West*, 210 F.3d 361 (4th Cir. 2000) (table) ("'Protected activity' refers to actions taken to protest or oppose statutorily prohibited discrimination."); *see also Hunter v. D.C.*, 905 F. Supp. 2d 364, 379 (D.D.C. 2012) ("As to the first category of protected activity—Hunter's reports of mismanagement and fraudulent activity to the OIG—nothing in the record demonstrates that his complaint to the OIG alleged discrimination on the basis of the characteristics protected by Title VII, so the Court cannot find it to be protected activity.").

Brewster argues:

> For Defendants to declare, as their Pleading appears to do, that a company can terminate the employment of an employee who supports an anti-retaliation claim of another employee, is not supported by law. If it were, Companies would clearly be able to reduce any employee by threatening termination to any employee who supports another and acknowledges wrongdoing by the company, supervisors, etc. This would alienate any employee who steps forward under Ohio's Anti-Retaliation law, and create an island of one in the fight against employer discrimination and criminal activity.

(Brewster, Doc. 14, at 3). And both Plaintiffs argue "Ohio Revised Code § 4113.52(A)(1)(a) provides that an employee is protected for disclosing a violation of Ohio law to a superior." (Dietrich, Doc. 13, at 5; Brewster, Doc. 14, at 5). But this merely confuses the issues and presumes – incorrectly – that reporting any wrongdoing is sufficient to trigger a Title VII retaliation claim. As set forth above, Title VII does not provide a remedy for retaliation for reporting *any* unlawful activity, but only for reporting activity that is unlawful *under* Title VII – that is, discrimination based on membership in a protected class.[4]

Here, Plaintiffs' Complaints only allege reporting of "abuses of power" (Dietrich Complaint, at ¶ 8; Brewster Complaint, at ¶ 19), and "wrongdoing" (Brewster Complaint, at ¶ 9).

---

4. And elsewhere Plaintiffs have admitted any claim under the Ohio Whistleblower statute is time-barred. (Dietrich, Doc. 13, at 10; Brewster, Doc. 14, at 12 ).

Dietrich's EEOC charge describes these actions as "taking advantage of staff, facilities, the time clock, and fudging hours and vacation/sick leave" along with "not being given bonuses." (Doc. 13-1). He further asserted the "inmates/residents were being verbally and emotionally abused by staff". *Id.*

Because Plaintiffs do not plausibly allege a reasonable, good faith belief that they were opposing conduct prohibited by Title VII when engaged in the underlying conduct of reporting "abusive" management practices, they have not identified protected activity for purposes of a Title VII retaliation claim, and Defendants are entitled to judgment on the Title VII retaliation claims asserted in the first cause of action of each complaint.

<u>Intentional Infliction of Emotional Distress – Dietrich and Brewster (Second Cause of Action)</u>

Defendants move for judgment on the pleadings as to both Plaintiffs' intentional infliction of emotional distress ("IIED") claims. (Dietrich, Doc. 12; Brewster, Doc. 13). They argue Plaintiffs' Complaints lack factual allegations to support a plausible *prima facie* case of IIED under Ohio law. Plaintiffs contend the claim should survive dismissal, focusing on the employment actions at issue – threatened retribution, suspension, and ultimately termination. (Dietrich, Doc. 13, at 9) ("This is intolerable in civilized society, for an employee to expose his boss and other employees for committing fraud and mistreating inmates and clients, to be terminated as a result."); (Brewster, Doc. 14, at 8) ("This is intolerable in a civilized society for an employee to support another employee and attest to the veracity of claims against management for committing acts in violation of state laws, and then to be terminated as a result."). Dietrich offers no response to Defendants' argument that his allegations of "unwelcoming conduct, demeaning behavior, and attacks on his sexual orientation" (Dietrich Complaint, at ¶ 28) do not rise to the level of extreme and outrageous. And Plaintiffs offer no

response to Defendants' argument that they have not pled facts to support a claim of a "serious emotional injury." *See* Dietrich, Doc. 13, at 8-9; Brewster, Doc. 14, at 7-9.

Under Ohio law, a plaintiff alleging an intentional infliction of emotional distress claim must allege facts showing that: (1) the defendant intended to cause the plaintiff emotional distress or knew or should have known that his actions would result in emotional distress; (2) the defendant's "conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community"; (3) the defendant's actions were the proximate cause of the plaintiff's injury; and (4) the plaintiff's "mental anguish . . . is serious and of a nature that no reasonable man could be expected to endure it." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983)).

The Court agrees with Defendants that Plaintiffs' complaints consist largely of vague and conclusory statements that do not plausibly allege an IIED claim.

First, the factual allegations of each complaint do not support the "extreme and outrageous" conduct element of such a claim. The Supreme Court of Ohio described what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Yeager v. Local Union 10, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 374–75 (Ohio 1983). "As a matter of law, the conduct must be more than mere 'insults, indignities, threats, annoyances, petty aggressions, or other trivialities.'" *Mason v. United States Fid. & Guar., Co.,* 69 Ohio App. 3d 309, 317, (Ohio Ct. App. 1990) (quoting 1 Restatement of

the Law 2d, Torts (1965) 73, Section 46, comment d). "The issue of whether conduct rises to the level of 'extreme and outrageous' is a question of law." *Spitulski v. Bd. of Educ. of the Toledo City Sch. Dist.*, 121 N.E.3d 41, 57 (Ohio Ct. App. 2018) (citing *Meminger v. Ohio State Univ.*, 102 N.E.3d 642, ¶ 14 (Ohio Ct. App.) (citing *Jones v. Wheelersburg Loc. Sch. Dist.*, 2013 WL 4647645, at ¶ 41 (Ohio Ct. App.)). "A number of courts have dismissed IIED claims where the facts alleged were not sufficiently extreme and outrageous." *Id.* (collecting cases). And "while this Court is obligated to construe all factual inferences in favor of Plaintiffs, it must also be cognizant that 'Ohio courts define extreme and outrageous conduct exceedingly narrow[ly].'" *McIntosh v. Greater Cleveland Reg'l Transit Auth.*, 2016 WL 5930284, at *5 (N.D. Ohio) (quoting *Wolfe v. Thermo Fisher Scientific, Inc.*, 2009 WL 1255023, at *2 (S.D. Ohio)); *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.").

Generally, termination of employment will not support an IIED claim even if the termination was for impermissible reasons. *See Godfredson.*, 173 F.3d at 376 ("But an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress."); *see also Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 620 (6th Cir. 2012) ("A decision to terminate an employee, regardless of whether the decision was discriminatory, is not sufficient to sustain a claim of intentional infliction of emotional distress.") (citing *Godfredson*, 173 F.3d at 376); *Black v. Columbus Pub. Sch.*, 124 F. Supp. 2d 550, 588 (S.D. Ohio 2000) ("Even if CPS transferred or failed to promote Plaintiff for discriminatory or retaliatory reasons, it does not follow that its actions were sufficiently outrageous for Plaintiff's claim. Without additional evidence that CPS acted outrageously, Plaintiff's claim must fail."),

*aff'd in part, vacated in part on other grounds*, 79 F. App'x 735 (6th Cir. 2003); *Limberg v. Roosa*, 2004-Ohio-1480, ¶ 38 (Ohio Ct. App.). ("even assuming that Limberg has suffered age discrimination and retaliation as she has alleged, we agree with the trial court that McDonald's conduct does not rise to the level of extreme and outrageous, as a matter of law").

Brewster's complaint merely alleges that she was "subjected to unwelcome conduct", "target[ed]", subject to "false accusations", her employment was threatened, and she was ultimately terminated. (Brewster Complaint, at ¶ 29). Although slightly unclear, it appears she attributes these actions to Burk and Wilson. *Id.* at ¶ 30. Dietrich's complaint alleges he was "targeted . . . in retribution" for his letter, and "subject to unwelcoming conduct, demeaning behavior, and attacks on his sexual orientation." (Dietrich Complaint, at ¶¶ 27-28). He asserts these actions happened "under Burk". *Id.* at ¶ 28. Elsewhere in his complaint, Dietrich alleges he was "targeted and subjected to explicit sexual profanity, specifically because of his sexual orientation." *Id.* at ¶ 35.

In light of Ohio law's demanding standard for "extreme and outrageous" conduct, the Court finds Plaintiffs' claim fails to state a plausible claim for relief. *Cf. Braun*, 2013 WL 623495, at *12 ("Here, plaintiff contends that Rossi and Wells yelled, threatened, and defamed her, continually telling others that she was insubordinate, unprofessional, young, and wild, allegedly because she did not conform to their gender stereotypes. Courts have found, as a matter of law. that discriminatory conduct far more 'extreme' than the conduct alleged here does not meet the 'outrageousness' standard.").

Second, even assuming either Plaintiff had identified "extreme and outrageous conduct" as required, the Court finds neither Complaint contains factual allegations to support "serious" emotional distress as is required. Under Ohio law, "serious mental anguish" is an exacting standard. As the Sixth Circuit recently observed, this

13

requirement "describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Examples "include traumatically induced neurosis, psychosis, chronic depression, or phobia."

*180 Indus., LLC v. Brunner Firm Co. LPA*, 2021 WL 4955268, at *2 (6th Cir.) (internal citation omitted) (quoting *Paugh v. Hanks*, 451 N.E.2d 759, 765 (1983)) (affirming dismissal of IIED claim where complaint alleged plaintiff had "intense heartache, suffering and pain," which "caused severe distraction, loss of focus and wasted time during his day-to-day responsibilities [at work], as well as with his interactions [with] his family"; and that his emotional distress was "serious, such that a reasonable person, normally constituted, would be unable to cope adequately."); *see also Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 508 (S.D. Ohio 2022) (finding allegation that Plaintiff had "suffered serious psychological injury as a result" insufficient without "factual specificity "explaining *how* [plaintiffs] 'suffered serious psychological injury' in a matter so extreme that they were 'unable to cope'"); *Ault v. Medina Med. Investors, LLC*, 2007 WL 81853, at *16-17 (N.D. Ohio) (finding bare assertion that plaintiff "has suffered and continues to suffer severe emotional distress" insufficient to satisfy the serious emotional distress element at the pleading stage); *Howkins v. Walsh Jesuit High Sch.*, No. 26438, 2013 WL 989376, at *8 (Ohio Ct. App.) (holding that allegations of "severe emotional distress, including being continually and constantly angry, upset, distraught, fearful, and anxious," did not state an IIED claim).

Each complaint contains conclusory language that the respective Plaintiff "suffered injuries including but not limited to emotional and physical distress, pain and suffering, inconveniences, mental anguish, loss of enjoyment of life, lost wages, and other benefits to which [he/she] was entitled[.]" (Dietrich Complaint, at ¶ 30; Brewster Complaint, at ¶ 31).

14

Plaintiffs have not alleged "serious emotional anguish" to support an IIED claim, and as such Defendants' are entitled to judgment on these claims.

Title VII Discrimination – Dietrich (Third Cause of Action)

Defendants assert Dietrich's Title VII claim based on his membership in a protected class fails as a matter of law because (1) he did not exhaust administrative remedies as to such a claim, (2) his claim of sexual harassment lacks plausibility due to the dearth of specific factual allegations, and (3) he has failed to allege facts under which the Worth Center or Wilson could be liable. (Doc. 12, at 5-11). In response, Plaintiff acknowledges his cause of action based on discrimination against a protected class was not exhausted and "cannot be the basis for his discrimination claim." (Doc. 13, at 9); *see also* Doc. 13, at 10 ("Plaintiff acknowledges that his third . . . claim[] [is] unlikely to survive a motion for judgment on the pleadings.").

A court may dismiss a discrimination claim if a Title VII plaintiff fails to exhaust his or her available administrative remedies with the EEOC. 42 U.S.C. § 2000e-5; *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); *see also McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008). As Defendants point out and Plaintiff concedes, Dietrich did not do so. *See* Doc. 6-1 (OCRC charge asserting retaliation, but not sex discrimination).

In reply, Defendants note that Plaintiff offered no response to their other arguments for dismissal and ask the Court to find Plaintiff waived any opposition to those arguments, and dismiss this claim "for all four of the reasons set forth in their motion." (Doc. 14, at 2). The Court declines to do so.

Based on Dietrich's concession that he did not exhaust his administrative remedies as to a Title VII protected class discrimination or harassment claim, Defendants are entitled to judgment on Dietrich's third cause of action.

<u>Title VII Discrimination – Brewster (Third Cause of Action)</u>

Defendants move for judgment on Brewster's Title VII discrimination claim on three bases: (1) Brewster failed to exhaust her administrative remedies as to a sex discrimination claim; (2) Brewster has not pled a plausible claim of age discrimination; and (3) even if Brewster pled an age discrimination claim, she has not alleged her age was the "but for" cause of her termination. (Brewster, Doc. 13, at 5-8).

*Sex Discrimination*

First, Brewster concedes that she did not exhaust a sex discrimination claim with the EEOC. (Brewster, Doc. 14, at 9); *see also* Doc. 14-1 (EEOC Charge of Discrimination asserting retaliation and age, but not sex, as basis for charge). As such, Defendants are entitled to judgment on Brewster's Title VII sex discrimination claim.

*Age Discrimination*

Defendants are correct (and Brewster concedes) that although Brewster appears to allege an age discrimination claim under Title VII in her third cause of action ("Plaintiff is an elderly woman, a protected subgroup under Title VII"), Title VII does not protect against age discrimination; the Age Discrimination in Employment Act ("ADEA") does. *See Clark v. City of Dublin*, 178 F. App'x 522, 524 (6th Cir. 2006) ("Title VII does not cover age . . . discrimination claims. . . . The appropriate remedy for age . . . discrimination claims comes from the ADEA[.]").

Defendants further contend Brewster has not specifically asserted a claim under the ADEA nor has she specifically alleged she was over 40, as is required to assert a claim under the ADEA. For the reasons set forth below, the Court finds that Plaintiff has not plead a plausible age discrimination claim regardless.

16

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Absent direct evidence of age discrimination, a plaintiff can establish his claim through circumstantial evidence using the *McDonnell Douglas* burden-shifting framework. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510 (6th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a *prima facie* case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz*, 534 U.S. at 510. At the pleading stage, a plaintiff need not prove a *prima facie* case of discrimination. *Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012). The plaintiff, nevertheless, must still plead facts showing the discrimination claim has facial plausibility. *Id.* at 610 (a plaintiff need only "allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that an employer engaged in unlawful discrimination) (quoting *Iqbal*, 556 U.S. at 678-79).

In the instant case, Brewster alleges she was "elderly", she was "qualified for her position", she performed her duties satisfactorily, Burk had no "formal grievances" with her "until after she voiced her concerns and wrote her letter to the Board" and that her age was a "prominent factor[] in her termination." (Brewster Complaint, at ¶¶ 33-37). Elsewhere she alleges she was "treated differently than the other employees", *id.* at ¶ 25, and "singled out for supporting another former employee and treated differently than the other employees because of it", *id.* at ¶ 10.

17

The Court agrees with Defendants that these conclusory allegations are nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation", *Iqbal*, 556 U.S. at 678, that does not rise to the level of a plausible age discrimination claim. *See El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015) ("Merely reciting the elements of the cause of action, couched as allegations, will not do."). The Court finds Brewster's assertion that she is "elderly" is at least sufficient to establish she is within the protected class covered by ADEA. *See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015) (ADEA prohibits an employer from "discriminating against an employee over the age of forty because of the employee's age."). But Brewster pleads no factual content from which the Court can link her termination with her age. Her conclusory statement that her age was a "prominent factor" in her termination is insufficient, absent any supporting facts to link the two. *See House*, 630 F. App'x at 463 (affirming dismissal of age discrimination complaint where the complaint was "devoid of facts that would support . . . an inference" that age discrimination occurred); *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) ("The district court found that Smith's complaint did not plausibly link her age and her termination because it merely recited the elements of an age discrimination claim. We agree."). Moreover, Brewster's conclusory allegations that she was "treated differently" than others are also not connected to her age, but rather only to her reporting of alleged mismanagement. *See* Brewster Complaint, at ¶ 10, 25.

The Court therefore finds Defendants are entitled to judgment on Brewster's age discrimination claim.

<u>Wrongful Termination– Dietrich and Brewster (Fourth Cause of Action)</u>

Defendants assert both Dietrich's and Brewster's wrongful termination claims must be dismissed because (1) these claims are untimely, and (2) neither pleads sufficient facts showing he or she is entitled to relief under Ohio Revised Code § 4133. (Dietrich, Doc. 12, at 15-17);

18

(Brewster, Doc. 13, at 13-15). In response, both Plaintiffs concede they did not comply with the Ohio Whistleblower Statute's requirement that a claim must be brought within 180 days of the retaliatory action, *see* Ohio Revised Code § 4113.52(D). (Dietrich, Doc. 13, at 10; Brewster, Doc. 14, at 12) ("Plaintiff concedes that [his/her] initial argument under the Title VII anti-retaliation provision is the appropriate argument, not an argument under ORC § 4113.52, more commonly known as Ohio's whistleblower statute."); *see also* Dietrich, Doc. 13, at 10 and Brewster, Doc. 14, at 12 (conceding this cause of action is "unlikely to survive a motion for judgment on the pleadings").

Again, Defendants request that the Court dismiss this cause of action for both reasons they initially set forth. The Court sees no reason to do so. Based on Plaintiffs' concessions that their wrongful termination claims are untimely, the Court grants Defendants' motion for judgment on the pleadings as to those counts.

<u>Request to Amend</u>

In the opening of each opposition brief, Plaintiffs both state: "Alternatively, Plaintiff moves this Court for a brief extension of time to allow an Amended Complaint to be filed." (Dietrich, Doc. 13, at 1); (Brewster, Doc. 14, at 1). Plaintiffs present no further specific argument regarding amendment. Defendants object in reply, arguing Plaintiffs have not established good cause to modify the scheduling order, nor have Plaintiffs explained what such an amendment would contain or how it would resolve the issues Defendants identified. For the following reasons, Plaintiffs' requests for leave to amend are denied.

Federal Civil Rule 16 requires the district court to enter a scheduling order that includes a deadline for amending pleadings. Fed. R. Civ. P. 16(b)(3)(A). It also establishes the district court can modify its scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). Consequently, notwithstanding Federal Civil Rule 15's directive to freely give leave to amend, a party seeking

leave to amend after the scheduling order's deadline must first meet Rule 16's good cause standard. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *Commerce Benefits Grp.*, *Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) ("Once the scheduling order's deadline to amend the complaint passes, . . . a plaintiff *first* must show good cause under Rule 16(b) for failure earlier to seek leave to amend and the district court must evaluate prejudice to the nonmoving party before a court will [even] consider whether amendment is proper under Rule 15(a).") (internal quotation marks and citation omitted) (emphasis added). Parties "can demonstrate 'good cause' for their failure to comply with the original schedule [ ] by showing that despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907. "An assertion of 'good cause' is likely meritorious when the moving party can show it 'has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party.'" *Cooke v. AT&T Corp.*, 2007 WL 188568, at *2 (S.D. Ohio) (quoting 3 Moore's Fed. Prac., § 16.14[1][c] at 16-72.1).

Here, the Case Management Order set a deadline of December 1, 2023, for amending pleadings. (Dietrich, Doc. 9; Brewster, Doc. 10). Plaintiffs have not presented any argument to satisfy Rule 16's "good cause" showing. Rather, they have presented nothing more than "a bare request in an opposition to a motion to dismiss", which "is not a motion to amend." *Louisiana Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (internal quotation marks and citation omitted)). Moreover, "Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) (internal quotation and citation omitted) (finding that "because Plaintiffs' request was perfunctory and did

not point to any additional factual allegations that would cure the complaint, the district court did not abuse its discretion in denying a motion to amend.").

As such, Plaintiffs' requests for leave to amend are denied.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings as to the case brought by Brad Dietrich, Jr. (Doc. 12) (Case No. 23 CV 920) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendants' Motion for Judgment on the Pleadings as to the case brought by Amy Brewster (Doc. 13) (Case No. 23 CV 1188), be and the same hereby is, GRANTED.


       *s/ James R. Knepp II*_____
UNITED STATES DISTRICT JUDGE